**In re ESTATE OF HINKLIN; Grimes, Appellant.**

[Cite as *In re Estate of Hinklin* (1989), 66 Ohio App.3d 676.]

Court of Appeals of Ohio,
Marion County.

No. 9–87–46.

Decided July 13, 1989.

*Clifford C. Spohn*, for appellant.

*Frank W. Phillips*, for appellee executrix.

HOFSTETTER, Judge.

On July 21, 1986, George H. Hinklin died testate survived by his mentally and physically incompetent wife, Elizabeth Hinklin. Mrs. Hinklin, then seventy-seven years old, is presently confined in the Marion County Rest Home totally incapacitated with Alzheimer's disease. On August 13, 1987, her attending physician, Dr. Hobe, testified in his deposition, "* * * I would imagine within the next year or two she'll die."

On September 18, 1986, a guardianship was established for Elizabeth. George Hinklin's will was filed for probate on September 26, 1986. This guardianship was based on both her physical and mental disability. A hearing was held on November 25, 1986, in the probate court on the question of election of the surviving spouse. The guardian for the incompetent, appellant herein, and the attorney for the executrix of the Hinklin estate addressed the question of the incompetent widow's election. The guardian, Michael Grimes, an attorney at law, appeared on behalf of the incompetent ward, Elizabeth Hinklin, and took the same position as the appellee executrix—that the election should be to take under the will and the court found accordingly. Before the court entered a judgment, Clifford Spohn, attorney for the guardian, contacted the court and filed a motion six days later on December 1, 1986, for another hearing: "Movant desires to introduce evidence as to the nature of the Ward's incapacity, predicted life span, and the economic value and benefit to be received by her in the matter before the court." The trial court did not immediately proceed to judgment. A further evidentiary hearing took place on September 28, 1987. Prior to this final evidentiary hearing Michael Grimes, the guardian, retracted his former position in favor of an election to take under the will and filed a memorandum on January 8, 1987, stating that it would be in the best interest of Elizabeth Hinklin to take under the law and not under the will.

The hearing was held on September 28, 1987, at which time the appellant urged the appointment of a commissioner. The court proceeded with the

hearing. Eight days later on October 6, 1987, appellant filed a written motion for the appointment of a commissioner which was overruled.

After the second or final hearing on September 28, 1987, the court found that an "election to take under Section 2105.06 of the Revised Code is not necessary to provide support for the surviving spouse during her life expectancy" and rendered judgment to elect to take under the will and overruled the motion for the appointment of a commissioner.

This appeal is from that judgment rendered on October 19, 1987.

The appellant has assigned four errors:

"1. The court's election for Elizabeth Hinklin to take under the will is against public policy and reversible error because this election does not enable her to provide for her necessary expenses and her own resources are so insufficient it is necessary for her to receive public assistance—wherein if the court had made her election to take under the law she would have received a distribution from her husband's estate that would have enabled her to provide for her own care.

"2. The court erred when it continually entertained and solicited evidence over objection as to the testator's intent and desires. Said evidence was highly prejudicial and irrelevant to the sole issue the trial court had to decide.

"3. It was an abuse of discretion for the court to fail to appoint a commissioner as mandate by Ohio Revised Code 2107.45 and this constituted reversible error.

"4. The court abused its discretion when it ruled that it was not necessary for Elizabeth Hinklin to take under Revised Code 2105.06 as she necessarily had 'adequate support' when the facts showed her support was not being provided by her own assets."

■ Before addressing the assignments it is necessary, we believe, to discuss whether the change in the wording of R.C. 2107.45, effective December 17, 1986, dealing with the election made by one under legal disability, is a procedural change or a substantive change. We think it is strictly procedural only, and therefore to the extent it became effective before the election for the spouse was made by the court, it had to be followed.

In former R.C. 2107.45, the function of the court was to appoint a suitable person to ascertain the value of the provision made for a spouse by the testator and the value of the rights in the estate for the spouse under R.C. 2105.01 to 2105.21. When the report of that appointed person was returned to the court, it became the function of the court to then determine which provision "is better for such spouse and shall elect accordingly" for the spouse under legal disability.

The current R.C. 2107.45 simply provides the guidelines and procedure for use by the suitable person and the court in determining the adequate support needs of the surviving spouse. The procedure requires taking into consideration the other available resources and the age, probable life expectancy, physical and mental condition, and present and reasonably anticipated future needs of the surviving spouse who is under legal disability.

It is obvious that if the surviving spouse were competent, she, as here, would elect to do that which was better for herself, the survivor. When one is capable of making that decision for herself, it is presumed she will exercise all the intelligence she has, based on all the information available.

The current R.C. 2107.45, in our opinion, simply provides the basis for the reasoning to be exercised by the court in performing that function for the spouse under legal disability. All of the information to be provided by the suitable person appointed to ascertain those facts is information that normally is known to or ascertainable by a surviving spouse *not* under disability.

It follows, then, that the end result of the court's judgment should be identical to that of the surviving spouse had she been competent to do her own reasoning. The end result, in our opinion, is the election which is better for the spouse.

Under either section, the requirement was that the probate court shall appoint some suitable person to ascertain the values of the provisions under the will and under R.C. Chapter 2105 and to make a report to the court from which it could make its judgment.

■ As to the first assignment of error, we cannot say as a matter of law that the court's election was against public policy. However, to the extent no suitable person was appointed to ascertain the values and to make a report, the procedural requirements were not followed. It is conceivable that the hearings could have provided all the information the probate court needed under the new section, but it didn't. Some, but not all, of the matters to be considered were not included in the evidence before the court. Sources, amounts and duration of the surviving spouse's income are not in the record. The amounts and durations of a railroad retirement pension, P.E.R.S. pension, and Social Security are not clearly determinable, if at all, from the record. The will, after a $1000 bequest to another person, left the balance to a trustee to hold *income* from the estate in trust for the widow. There was no evidence to determine what that income would be. As *all* of the determinative factors required under the guidelines procedurally required under current R.C. 2107.45 were not included in the evidence before the court, the judgment must be reversed for the appointment of a suitable person to return a report of his investigation to the court from which the probate court can make a judgment

in accordance with the statute. From the data before us, we can only determine that the court's process for arriving at its decision must be reversed. We cannot predict the ultimate outcome of the correct procedures.

■ As to the second assignment of error, the procedure before the court was not intended, pursuant to statute, to be an adversarial one. The intent of the testator is not one of the bases for determination of the election to be made by the court for one under legal disability. This assignment is well taken.

As to the third assignment, our earlier remarks support the appellant's claim that it was an abuse of discretion for the court to fail to appoint a suitable person, as required by either the old or new sections, to assist the court in making the election, and thus constituted reversible error.

■ With regard to the fourth assignment, the court abused its discretion when it proceeded in the manner that it did without the benefit of a *suitable person's* return of an investigation. To that extent this assignment has merit. Inasmuch as the statute provides that the court may consider "other available resources," we cannot say as a matter of law that "adequate support" must be from one's own assets. The court's judgment concerning its "adequate support" finding, had the proper procedure been followed, would not necessarily have been an abuse of discretion if the facts warranted that conclusion.

For all the reasoning noted, the judgment of the probate court is reversed and this cause is remanded to the Probate Division of the Common Pleas Court for compliance with the current R.C. 2107.45.

*Judgment reversed.*

EVANS, P.J., and SHAW, J., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.